Good morning. My name is Eric Lynn. I represent the petitioner in this matter. I'd like to reserve two minutes at this time for a rebuttal. This case involves an application for political asylum in which the immigration judge committed a series of errors that led up to the denial. What we're seeking today is the remand of the proceedings back to the agency, back to the EOIR, to allow for a hearing to remedy those errors. The first error that was committed is the issue of the designation of the country of removal. I think this is a very serious error because the entire analysis of whether or not a person fears removal to his country of removal is tainted by the fact that the judge considered the dangers or the lack of dangers of removal to another country of which my client is not a citizen. The brief factual history of this is that excuse me, my client is a native and citizen of Ethiopia. He was born in Ethiopia. He's never been a citizen of any other country. His parents are citizens of Ethiopia. Yet in this case the immigration judge relied on certain indications in the record to say that my client could be deported to Eritrea instead of Ethiopia. Her decision is full of instances in which her confusion on this issue leads one to believe that it was not a proper designation. Ethiopia is a proper designation, but the alternative country was not. That's your position? Correct. But as long as he's deported to Ethiopia, then that's not a problem. Right. We're not challenging the designation of Ethiopia. I think that is a proper designation in this case. But it goes beyond just the fact that there was an alternate designation of removal. Well, I'm just wondering what your then we no longer have the problem. To a certain extent. But like I was saying, the issue goes beyond just the fact that there was a designation of Eritrea. Our position is more along the lines of the analysis of my client's fear of persecution is tainted by the fact that she considered it was not a danger. Let me ask you a question on that. What we have here is, as we do in most of these cases, a country that's not a very pleasant place to live in. And so we can't take everybody that wants to be here because there's an unfortunate circumstance in our country. We have a subject in in our line. We have to have to have a subject, even an objective fear. Suppose assume I understand this is a this is a problem, but but assume that that we take the position of the this, what she perceived to be a falsified document is sufficient that she can say that I do I do not believe this man. There's no credibility. The only way that we know that he has a subjective fear is because he says he feels it. If the IJ has rejected the credibility, then can't the IJ object reject his statement that he has a subjective fear to return? That's that's the the issue of the false identity goes does is one of the the reasons cited by the judge to support her adverse. I understand and you'll get to that point, but if we do sustain the IJ, is that sufficient where the IJ could say I do not believe your statement of subjective fear? That's the question. If you sustain the the judge's adverse credibility assessment, yes, but I think that the issue is that I don't believe the credibility assessment can be sustained. The judge cites to three factors on the issue of credibility, two of which I almost think should be dismissed out of hand. One is a factual inconsistent an alleged factual inconsistency that doesn't exist in the record. The second issue is a statement along the lines of my client he does not appear to physically to look half-Eritrean. Yeah. And I just think that that I mean it doesn't withstand challenge where there are countless other ways in which a government can ascertain ethnicity. The false identification the what the judge did with the false ID is that she said I believe the document is fraudulent therefore I don't believe the the testimony. However, the the false identification of assuming it is false and we're not conceding that at this point, but assuming it is false doesn't necessarily go to the heart of this the claim. Wow. Because the judge didn't tie that in to the issue of identity. She never claimed or stated that her position, her belief that I do not believe this man's identity. She merely said a false identification equates to a lack of credibility. If he knowingly procured a false document, I'm not convinced he did that, but if someone knowingly obtained a false document, a forgery, an out-of-the-country just while he's on the lam, but then when it comes to court and passes it off as valid knowing that it's not valid, wouldn't that affect the trier-of-facts assessment of that person's credibility? I don't think that that's what happened here. I didn't say it happened here. I'm just in general wouldn't you agree that knowingly presenting a false document to the judge not doing what you have to do to get out of a bad situation, but coming to court and offering a document you know to be false, wouldn't the judge be within her rights to say that affects my assessment of that person's credibility? Yes. On the other hand, the issue of a false document still, or for that matter just any misrepresentation, any statement that's made that's not true, still has to relate to the heart of this case. And I don't believe in this case. Isn't the basic issue here of where he was born, isn't that an issue? It is one of the issues that needs to be proven to establish asylum, yes. And there was a dispute as to what he put on there, whether he was actually born there, and then he backed off and said no, there's other reasons for it. But that certainly goes to the heart of the issue. It can. I'm not saying that it can't. It can go to the heart of the issue. What I'm saying, in this case, it didn't. The judge never got to the point where she said, I don't believe this man's identity. I don't believe his claim that he is from Ethiopia. I don't believe he was, he's, he's, he's... Didn't she make a negative credibility finding? Yes, but not on the issue of identity. What she said is because he's presented what she thinks is a fraudulent document, I find he's a liar. That, that is... Can't trust his testimony. That's what she said. But, like, as the Court has in numerous precedent decisions, if the issue that, on which she bases that is not a primary issue... I don't think the cases say that. I think the cases say that if there is an inconsistency, before the judge can draw an adverse credibility finding based on an inconsistency, a mere inconsistency, it has to be an inconsistency that's, that's material. This is something different. This is not finding that, you know, you've, you've testified one way, one place, you told the asylum officer something else. She's saying you came to court, and while you were on the witness stand, you basically lied in court. That's what she's, that's what she's saying. Mm-hm. I, I would still, again, go back and state the fact that we, we're not conceding that it was a false document. We're only stating that the judge found that it was. If we agree with you on your, I'm not saying we do, but if we would agree with you on your credibility argument, what do we do with the case? We are requesting a remand. At that step. Right. Right. And I think that there are other factors here that justify a remand, because there are, there's an alternative form of relief ultimately available. We're frustrated in this case as well as in others by the fact that there's no mechanism to remand cases from this court back to the agency. One of the issues that seems to me is, that I don't quite understand, she was saying that the objective fear is not reasonable because he was never specifically targeted as an individual. That is, that there's nothing other than the reports saying that people with his particular bloodline are going to be in, into difficulty. Is that sufficient? Does the I.J. saying there must be some evidence that this individual is targeted and will be targeted when they go back to, for the objective prong, is that enough to just say that people generally that fit his particular genetic makeup will be targeted? I believe so. The issue here on the issue of persecution is that we're not just talking about a deportation. We're talking about a person being forcibly arrested and removed from their homes and then sent. So if your argument is right then, every person that comes in with some blood of urethra, some blood, automatically is a refugee to be accepted. They can establish a well-founded fear based on that. Well, the well-founded fear in this case, as you say, is these reports that say generally these people will be persecuted. Yes. So automatically, if you come within that bloodline, automatically, by your argument, they are to be a refugee. Especially if they can establish that there are, there's a significant likelihood of that actually happening, yes. And they don't have to demonstrate they've been targeted individually. Just merely being, having some blood in their veins is sufficient. I believe so, yes. Okay, thank you. Thank you, Mr. Lin. For the government. May it please the Court. Good morning. My name is Arthur Rabin. I represent the Respondent, Attorney General Alberto Gonzalez. With the Court's permission, I'd just like to address one issue that Mr. Lin just talked about previously, as to if the Court does agree with his credibility analysis, whether it should remand. We would disagree with that because, obviously, there were alternative grounds for denial of asylum here. Well, he didn't say, he didn't, I read that, his decision very carefully. I didn't see where he said, assuming that we take his testimony as true, alternatively, he's failed to establish the other elements. Well, what the judge did. He, if you go to his decision, I mean. Just around page 47. What page? 47. 47. So where does he accept that Mr. Asefa's testimony is true? He never, basically, he conducted, as IJs usually do, they conduct a credibility analysis first, and then they go to the merits of the case. Yeah, and they say, find him not credible, and he goes on and decides the case, assuming that he's not credible. He doesn't believe his testimony, so therefore he's failed to establish all the elements. Well, he didn't explicitly say, okay, you know, the burden. Well, show me where he says that he took his testimony as true. He, on page 47, he said, respondent claims his father is an Ethiopian and mother's Eritrean, which is where he goes into the actual merits of the case. The respondent also testified he wasn't Addis Ababa until after the country. Respondent provided no evidence of past persecution, period. That is a finding on the merits. He found that after, she found that, it's a woman, I think, she found that after finding him not credible. That's correct, Your Honor. So she conducted the credibility analysis, and then she went to the merits of the case, which is how it's usually done. That's how they always do it. They deal with the testimony of the petitioner, and then. So if we, on my point, I guess my question to counsel was that if you accept, I mean, if you accept his argument that the credibility findings are not supported by substantial evidence, shouldn't the case go back to the board, so the board can then take his testimony as true and then complete the analysis with his viewing his testimony as true and accurate? Well, if Your Honor. That's what Ventura tells us to do. Well, but here there was alternative grounds for finding no asylum. That is, no merits. That is, no well-founded fear of future persecution, no past persecution, which are all part of the burden of proof of any alien that comes with an asylum claim. He must prove by credible, direct, specific testimony that either he experienced past persecution on account of a protected ground or that he has a subjective and an objective fear of a well-founded fear of future persecution. What Judge Pius is getting at is the same question I have. If she is wrong about the credibility. Right. Then shouldn't she go back and decide whether he had past persecution? She did. No, she didn't. She said, I don't believe him. She said, I don't believe what he says. Now we say, if we go back and now believe what he says, shouldn't she then evaluate whether what happened to him, the soldiers come to his house and they look for him and they take his mother, whether that constitutes past persecution? Assuming that to be true, I mean, isn't that what we would have to have her do? Well, Your Honor, she did make the conclusion on the record. I quote, the respondent provided no evidence of past persecution. Because she doesn't believe what he said. But that has nothing to do with what he said, whether she believed it or not. It's what is the evidence of past persecution, which is usually mistreatment, detention, beatings. She's saying I don't find him credible. Basically, I've disregarded his testimony. It's not worthy of any weight. It's not credible. It's not believable. Well, Your Honor, I, okay, well, I read it differently, but I will assume that, you know, if the Court does decide that way, then I will just discuss the adverse credibility finding. In this particular case, as Mr. Lin said, the issue was identity. You know, is he, because he claims persecution, he fears future persecution because of who he is, that is, his ethnicity. It's not a political asylum claim. It's an ethnicity claim, that is, on account of his race and nationality. He is saying, well, my mother's hat was Eritrean, making me of mixed parentage, and thus I believe I would also be persecuted because of my half-Eritrean background. So the IGES says, well, how do we know that? What is your proof? He provides an identity card. She makes an assumption on that issue that's wrong on page 48 of the excerpt. However, the country reports support the Eritreans are being deported from Ethiopia to Eritrea. There is no evidence that persons of half-Ethiopian and half-Eritrean are being targeted for persecution in either Ethiopia or Eritrea. Is that a correct statement of the record? Of half? Is that a correct statement of the record, that there is no evidence of that? There is no evidence of that in the country report. In the country report? The only evidence in the record that I ever found of mistreatment of half-parentage was in a short statement on page, let me find it, Your Honor, in Amnesty International report that . . . Just the opposite of what she said. That there were some persons of half-Eritrean background, some, on page 414 of the record, Your Honor. Yeah, I've got it in front of me. Okay. That is the sole evidence in the record. Now, the country reports only talk about . . . Don't go forward with your argument. Just let me ask my question, if you wouldn't mind. Yeah, sure. Is that statement that she made, in her opinion, right or wrong? There's no evidence, she said. Is that right or wrong? Well, I don't know how she's reading the record, Your Honor. If she's reading the statement on page 414 where the Amnesty International report only says that also some people of part Eritrean origin, too, are being deported, then that makes the statement wrong. If she's completely disregarding that. What I think she's referring to . . . Maybe a yes or no answer would be, is her statement that there's no evidence in the record right or wrong? I'm not sure I can answer it in a yes or no. I'm trying to answer it based on the record, Your Honor. If you're saying that that statement contradicts her, then yes, she is wrong. Yeah, I'm not saying anything. I'm trying to get your interpretation of this language that the I.J. used. Yeah, I mean, I don't think she's wrong. The bulk of the record . . . I mean, we're talking about 99.9 percent of the record only talks about persons being deported who are of full Eritrean descent origin, either ones who moved from Eritrea to Ethiopia or ones who were of full-blood heritage. That statement from the Amnesty International report on page 414, that some persons of half Eritrean origin are being deported, is the sole evidence in the record. Okay. And we're talking about some 700 . . . I'm sorry, Your Honor. I'm not arguing about that. I'm just wondering whether she's right when she says there's no evidence. And it seems clear to me there is some evidence. There is some evidence. It may not be enough. So my question to you is, if that is the basis of her decision, do we have to send it back for that reason? No, because that was not the sole basis of her credibility finding. And that was not the sole basis of her past persecution or future persecution claim. I mean, if, you know, as I was saying, the issue of credibility, that, you know, who is he and where does he come from was the issue. Is he really of half Eritrean descent? He provided an identity card that was then, the evidence on the identity card saying of where he was born, Cher Cher, which is what it said, contradicted his own testimony. What is Cher Cher, do you know? I don't know, Your Honor. We did a little Internet research and it appears like Cher Cher is more or less equivalent to a county. His expert testified it's a place. That's all the sole evidence. It's a region, I think. It's a region. She drew the conclusion that because it said basically King County instead of Seattle, that it was false. Not only false, but fraudulent. She then confronted him with the statement saying, well, wait a second, you testified that you're from DASA. And he said, well, the identity card then must be listing my father's place of identity or place of birth. And then he said, changed his testimony and said, no, that must be talking about my ethnicity, who I am. Well, why isn't that entirely plausible? Because his own expert said. His own expert didn't even see the card. Isn't that right? He was asked the question. His own expert testified by telephone from Oklahoma. Okay, so he never even saw the card. No, he didn't. But he was asked by the IJ over the telephone, is Cher Cher a place of ethnicity? And he said, no, that's a location. It's a mountain range region, as I understand it. A WERDA, is that what they call it? Suppose we take judicial notice of the fact that Cher Cher, which is a WERDA, is an administrative region. Suppose we take judicial notice of that fact, demonstrable fact from an atlas. What do we do about that? Well, the fact that you take judicial notice, which you can, Your Honor, because it's a place on the map, of where it's located, does not mean that the IJ does not have substantial evidence in the record supporting her finding that Petitioner provided inconsistent testimony, which was then contradicted also by his own expert about what these things constitute, what these things mean. His expert was a political scientist, right? Yes, Your Honor, yeah. Not a question documents examiner or forensic. No one testified that the card was fraudulent. Yeah, basically. Okay. Thank you very much, Mr. Raven. Thank you, Your Honor. Mr. Lynn will give you a minute in rebuttal. Thank you. Going back again to the issue of the false identity, I think that not only, as Your Honor pointed out earlier, is the document actually a false document. I mean, we're not conceding that again. But, again, it needs to be tied into an issue where, beyond just the fact that false ID equals lack of credibility, and I think that that's all the judge said. The judge didn't say I don't believe the person's identity, nor do I think that the claim, the primary aspect of the claim itself doesn't exist. I don't think that that's one of the issues here. And then the other issue I wanted to address is that I think a remand is appropriate. I just want to reiterate that, not only because the error is committed by the judge, but because of the alternative form of relief that's available in this case. Thank you very much. Mr. Lynn, Mr. Raven, thank you. The case to start is submitted. 0430246, United States v. Wilson is submitted on the briefs. The next case to be argued, then, is 0435757, Ferrero v. Fleming. Each side will have ten minutes.
judges: Wallace, Silverman, Paez